Michael WOOLEY, et al., Plaintiffs,

v.

SMITH & NEPHEW RICHARDS, INC., Defendant.

Civil Action No. G–97–506.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 16, 1999.

Kenneth Ross Citti, Citti & Crinion, Houston, TX, for Ross Citti.

James Baker Manley, Manley & Alter, Pasadena, TX, John J. Cummings, III, New Orleans, LA, for Michael Wooley, Rita Wooley.

Ann Pate Watson, McFall Sherwood & Sheehy, Houston, TX, James B. Irwin, Montgomery Barnett Brown Read Hammond & Mintz, New Orleans, LA, Kim E Moore, Hammond & Mintz, New Orleans, LA, Brian B. Quirk, Nathan T Gisclair, Barnett Brown et al, New Orleans, LA, for Smith & Nephew Richards, Inc.

Ann Pate Watson, McFall Sherwood & Sheehy, Houston, TX, for Smith & Nephew PLC.

DeWitt M. Shy, Jr., Stephen D. Crawley, Brook Lathram, Burch Porter et al, Memphis, TN, for Abraham Rogozinski, Chaim Rogozinski.

Norman P. Jeddeloh, Burditt and Radzius Chicago, IL, Thomas Shahriari, Porter Wright et al, Washington, DC, for American Academy of Orthopedic Surgeons.

Robert E. Kerrigan, Jr., Janet L. MacDonell, Deutsch Kerrigan et al, New Orleans, LA, for Scoliosis Research Society.

Michael R. Fruehwald, Barnes & Thornburg, Indianapolis, IN, for Ace Medical Co., Depay–Matech Inc.

David M. Gold, Aubert & Pajares, Metairie, LA, for Advanced Spine Fixation System, Inc.

Lawrence A. Mann, Leake & Anderson, New Orleans, LA, for Cross Medical Products.

Robert R. Reeder, Cozen & O'Connor, Philadelphia, PA, for Synthes (U.S.A.), Synthes Inc., Synthes North America Inc.

Stephen S. Phillips, Philip H. Lebowitz, Pepper Hamilton et al, Philadelphia, PA, for Danek Medical Inc., Sofamor–Danek Group, Inc., Warsaw Orthopedic Inc.

Michael D. Hudgins, Hudgins Hudgins and Warrick, Houston, TX, Carl A. Henlein, Brown Todd et al, Louisville, KY, for Youngwood Medical Specialties Inc.

Thomas G. Stayton, Leslie S. Rogers, Baker & Daniels, Indianapolis, IN, for Zimmer Inc.

Alan R. Peterman, Hiscock & Barclay, Syracuse, NY, for Hansen Yuan, M.D.

### ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE THE EXPERT OPINION TESTIMONY OF DR. LANCE YARUS AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR LACK OF MEDICAL CAUSATION

KENT, District Judge.

Plaintiffs bring this products liability action against Defendant Smith & Nephew Richard, Inc. ("S & N") for personal injuries allegedly caused by pedicle bone screws used in Plaintiff Michael Wooley's spinal fusion surgery. Now before the Court is Defendant's Motion to Exclude Expert Opinion Testimony and Defendant's Motion for Summary Judgment for Lack of Medical Causation filed September 27, 1999. For the reasons stated below, the Motion to Exclude Expert Opinion Testimony is **GRANTED,** but the Motion for Summary Judgment is **DENIED.**

## I. FACTUAL SUMMARY

Plaintiff Michael Wooley injured his back on June 3, 1984 as a result of an automobile accident. Shortly thereafter, he underwent nonsurgical traction treatment and corset bracing, but continued to suffer intermittent back pain. By January 1995, Plaintiff Wooley's back pain grew increasingly sever, rendering him unable to move. Later that month, Plaintiff Wooley's orthopedic surgeon, Dr. Donald Wagner, recommended and ultimately performed surgery to fuse Plaintiff Wooley's spine in an attempt to relieve his pain. During the surgery, Dr. Wagner implanted a pedicle screw device into Plaintiff Michael Wooley's spine using a Simmons Spinal Plating System—a surgical product designed, manufactured, and sold by Defendant. The technique, called "pedicle fixation," served to stabilize Plaintiff Wooley's spine and to promote the growth of newly implanted bone grafts. According to Plaintiffs, the bone grafts failed to grow, and fusion was not achieved. As a result, Plaintiff Wooley's back pain continued. Hoping to alleviate the pain, Dr. Wagner performed an anterior lumbar fusion on April 4, 1995—but Plaintiff Wooley's condition allegedly worsened. Still hoping to reduce Plaintiff Wooley's discomfort, Dr. Wagner conducted a surgical procedure involving facet blocks in May 1995, which appeared to improve Plaintiff Wooley's condition. Then, on September 26, 1995, Dr. Wagner removed the pedicle screw device, thereby

explanting the Simmons Plating System. Plaintiffs claim the Simmons Plating System treatment failed to produce positive results and ultimately required Plaintiff Wooley to undergo further surgery on December 27, 1995.

Invoking federal diversity jurisdiction, Plaintiff Michael Wooley and his wife filed suit on August 26, 1997 against a multitude of Defendants in the Galveston Division of the Southern District of Texas, contending that, among other things, Defendant's Simmons Plating System injured Plaintiff Wooley by causing his back pain to persist after his spinal fusion surgery. Due to the enormous volume of litigation stemming from medical injuries allegedly caused by pedicle screw devices such as the Simmons Plating System, this matter was transferred to the Multi–District Litigation Panel ("MDLP") for the Eastern District of Pennsylvania on October 16, 1997. Upon completion of the consolidated pretrial proceedings on July 28, 1999, the MDLP remanded the case to the Galveston Division of the Southern District of Texas for trial.

Originally, Plaintiffs asserted ten separate causes of action, but later withdrew their claims based on conspiracy and concert of action. Prior to remand, Plaintiffs also amended their complaint by dropping suit against all defendants other than Defendant S & N. What remain are Plaintiff Wooley's claims for fraudulent marketing and promotion, negligent misrepresentation, strict liability, liability per se, negligence, and breach of warranty of merchantability—all based on allegations that Defendant was negligent in the design and/or manufacture of its pedicle screw system, and that the screws themselves are unreasonably dangerous. Additionally, Plaintiff Wooley's wife has filed suit against Defendant S & N for loss of consortium. In attempting to prove medical causation, Plaintiffs appear to rely entirely upon the testimony of a single expert, Dr. Lance Yarus.

## II. ANALYSIS

### A. *Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.* 799 F.Supp. 691, 693 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* FED.

R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the ·material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

**B.** *Defendant's Motion to Exclude Dr. Yarus's Opinion Testimony*

■ Defendant has moved to exclude the testimony of Plaintiffs' expert, Dr. Lance Yarus, alleging that Dr. Yarus's opinion concerning the cause of Plaintiff Wooley's continued back pain fails to meet the standards of Rule 702 of the Federal Rules of Civil Procedure. For Dr. Yarus's opinion to be admissible under Rule 702, he must be qualified to testify, and his opinion must employ scientifically valid reasoning so as to establish its reliability. *See* Fed.R.Evid. 702; *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1454, 143 L.Ed.2d 541 (1999); *see also Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 714 (Tex.1997) (noting that in medical products liability cases expert opinion relating to causation must be independently evaluated for reliability). In addressing the admissibility of Dr. Yarus's opinion, the Court follows the long procession of trial judges who have previously held that Dr. Yarus's expert testimony in pedicle screw products liability cases fails Daubert's reliability requirements.

1. *Is Dr. Yarus Qualified?*

For testimony to be admissible under Rule 702, the expert witness must first be qualified. Federal courts have construed this requirement quite broadly. *See, e.g., Kopf v. Skyrm,* 993 F.2d 374, 377 (4th Cir.1993) ("The witnesses' qualifications to render an expert opinion are also liberally judged by Rule 702."). In this case, Dr. Yarus purports to have an opinion about Defendant's pedicle screw device that allegedly injured Plaintiff Wooley. However, in its motion to exclude, Defendant characterizes Dr. Yarus—a doctor of osteopathy—as having "only de minimis experience in the area of lumbar spinal fusion surgery in general and absolutely no experience with spinal fusion with instrumentation and its various means of fixation to the spine in particular." *Def.'s Mem. Supp. Exclusion of Op. Test. and Summ. J. at 8.* For their part, Plaintiffs acknowledge that Dr. Yarus has not participated in any surgery to implant or to remove spinal devices using pedicle screws. Moreover, the evidence shows that it has been almost a decade since Dr. Yarus has participated in any type of lumbar fusion surgery. Dr. Yarus's limited exposure to this particular field of medicine is also demonstrated by the fact that he has not performed any original research, nor has he published any scholarship on subjects related to internal spinal fixation, including pedicle screw surgery. In fact, Dr. Yarus has never seen the particular medical device that forms the subject of this products liability litigation.

■ In fairness to Dr. Yarus, however, the Court notes that he does work as a sole practitioner in a general orthopedic practice, treats patients with implanted spinal hardware, has admission privileges at local hospitals, serves as a member of a recognized professional community in orthopedic surgery, and conducts orthopedic surgery on a regular basis. In evaluating

Dr. Yarus's overall background, the Court therefore finds ample evidence that Dr. Yarus has a modest degree of specialized knowledge applicable to the claims made in this case. Consequently, the Court holds that Dr. Yarus possesses at least threshold qualifications to adequately express an opinion in this case. *See Pulice v. Smith and Nephew Richards, Inc.*, No. Civ–97–2080, 1999 WL 613370, at *5 (W.D.Ark. Mar.29, 1999) (determining Dr. Yarus as being qualified to offer an opinion in a pedicle screw case involving Defendant S & N); *see also Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1135 (5th Cir. 1985) ("Whether a witness is qualified to testify as an expert is left to the sound discretion of the trial judge, who is in the best position to determine both the claimed expertise of the witness and the helpfulness of his testimony"). The question of the reliability of Dr. Yarus's testimony, however, does not end with this conclusion.

### 2. How reliable Are the Techniques Dr. Yarus Used to Reach His Opinion?

■ The second requirement for analysis under Rule 702 is to determine the reliability of the process or technique used by Dr. Yarus in formulating his opinion. *See Daubert*, 509 U.S. at 579, 113 S.Ct. at 2786. To be admissible, the expert must follow "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *See Kumho*, 119 S.Ct. at 1176. Under the standards outlined in *Daubert*, the trial court may examine the methodology employed by an expert to reach the offered opinion, which includes whether that theory has been tested, whether it has been subjected to peer review or publication, whether it has a known potential rate of error, and whether it is generally accepted within the relevant scientific community. *See id.* This list of factors, however, is not definitive, and trial courts possess considerable leeway in each particular case to choose how to determine whether particular expert testimony is reliable. *See id.* at 1277. In the end, the Court must consider whether Dr. Yarus's opinion has been subjected to the scientific method in order to rule out "subjective belief or unsupported speculation." *Id.* 113 S.Ct. at 2795. Given this framework, the Court now turns to Dr. Yarus's report and the process he employed to formulate his opinion.

Dr. Yarus's two-page report first summarizes Plaintiff Wooley's medical records and then concludes:

It is my opinion to a reasonable degree of medical certainty that there is a proximate cause and effect relationship between the implanted metallic devices and the progressive impairment disability that ensued subsequent to the implantation....

It is my opinion to a reasonable degree of medical certainty that there was no indication for the implanted screws nor were there indications for the implanted metallic devices for this gentleman's spinal condition. His progressive impairment and disability was directly related to the implanted metallic devices necessitating further intervention. There was a lack of improvement in his condition overall in the body of the record reviewed....

*Def.'s Mem. Supp. Exclusion of Op. Test. and Summ. J., Ex. M at 2.*[1]

---

1. The conclusion reached by Dr. Yarus in this case typifies this "expert's" apparent penchant for producing what some have called "cookie cutter" opinions for bone screw plaintiffs throughout the United States, because the language used here by Dr. Yarus closely mirrors that used in reports for plaintiffs in other bone screw litigation. *See, e.g.*, *McCollin v. Synthes, Inc.*, 50 F.Supp.2d 1119, 1126 (D.Utah 1999); *McLellan v. Sofamor–* Danek Group, Inc., No. 95–CV–0322E(H), 1999 WL 222591, at *3 (W.D.N.Y. April 12, 1999); *Alexander v. Danek Med., Inc.*, 37 F.Supp.2d 1346 at 1349 (M.D.Fla.1999); *Savage v. Danek Med., Inc.*, 31 F.Supp.2d 980, 983 (M.D.Fla.1999); *West v. Danek Med., Inc.*, No. Civ–97–575–T, 1998 WL 1041327, at *2 (W.D.Okla. Dec.28, 1998).

Moreover, a careful examination of Dr. Yarus's concluding paragraph reproduced above

■ Because these two conclusory paragraphs represent the sum total of Dr. Yarus's analysis, the Court finds it reasonable to hold that Dr. Yarus's opinion lacks any scientific basis. This determination is justified for several reasons, each of which centers around the fact that Dr. Yarus has failed to offer a basis for his conclusions. First, Dr. Yarus has never personally examined the screw manufactured by Defendant, and Dr. Yarus's opinion does not identify any particular defect in Defendant's Simmons Plating System, nor does the report causally relate such alleged defect to Plaintiff Wooley's postoperative complaints. Second, the Court notes that Dr. Yarus has never personally examined Plaintiff Wooley, spoken with any of Plaintiff Wooley's treating physicians, or reviewed X-rays of Plaintiff Wooley's surgical site. Third, Dr. Yarus does not point out any symptoms occurring after the pedicle screw surgery that did not also exist before the surgery, or any basis for concluding that the pedicle screw implant caused Plaintiff Wooley's pain when compared to other possible causes. Instead, Dr. Yarus appears to reach a generic conclusion by making a temporal connection between Plaintiff Wooley's alleged injuries and the surgical implants. *See Pulice*, 1999 WL 613370, at *5 (pointing out that because Dr. Yarus "has relied on nothing more than litigation reports and lawyer prepared summaries[,] it is reasonably clear that such materials 'are not of a type reasonably relied upon by experts in a particular field'" (quoting *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir.1994))). In the end, Plaintiffs have utterly failed to show that Dr. Yarus undertook a valid scientific methodology in reaching his conclusion that Defendant's Simmons Plating System caused Plaintiff Wooley's postoperative injuries.

Plaintiffs' counsel attempts to explain away the method Dr. Yarus employed in forming his opinion by stating that Dr. Yarus reviewed relevant documents provided to him by Plaintiffs' legal team. These include a select number of documents taken from the large volume of Plaintiff Wooley's medical records. *See Pls.' Reply to Def.'s Mot. to Exclude Op. Test. at 11–12.* In evaluating the overall evidence presented, it is clear to this Court that Dr. Yarus's method for formulating his opinion falls far short of the requirements the Supreme Court established in *Daubert*.[2] Dr. Yarus hopes to testify "to a medical certainty" that Plaintiff Wooley suffered postoperative injuries because of Defendant's Simmons Plating System. Dr. Yarus arrives at this conclusion without indicating the methodology used and without offering a single word explaining

---

reveals that Dr. Yarus appears to be insinuating that Dr. Wagner exercised poor judgment by choosing to use the Simmons Plating System on Plaintiff Wooley. But such a conclusion is completely irrelevant in the context of the products liability claims aimed at Defendant. Dr. Wagner is not a party to this suit, and Dr. Yarus's questioning of Dr. Wagner's decision to use pedicle screw implants on Plaintiff Wooley does not equate to a defect in the device itself, nor does it, standing alone, support the theory that the Simmons Plating System caused Plaintiff Wooley any postoperative injuries. *See Strange v. Sofamor Danek Group, Inc.*, No. JFM–95–3193, slip. op. at 5 (D.Md. Aug. 5, 1999) ("[T]o the extent that it is Dr. Yarus's view that use of a pedicle screw constituted an error of medical judgment, his opinion might be relevant in a medical malpractice action, but it is not germane in a products liability action against a manufacturer of the medical device."); *Hartwell v. Danek*

*Med., Inc.*, 47 F.Supp.2d 703, 708 (W.D.Va. 1999) (noting that Dr. Yarus's testimony lacks "specificity about a hardware-related cause of injury, focusing instead on the issue of whether the implantation of the hardware was warranted.... It will not be enough to survive a defendant's challenge of proof of cause for a doctor to state that the surgery itself was performed in error."); *West*, 1998 WL 1041327, at *6 ("[E]ven if the doctor [Yarus] is accurate that the plaintiff's condition was incorrectly treated by implanting the device, that alone does not show that the device caused the plaintiff's injuries").

2. It is worth noting that Plaintiffs cannot point to a single court order that has found Dr. Yarus's opinion to be reliable—despite the fact that Dr. Yarus has attempted to testify as an expert in dozens of pedicle screw cases.

the basis for his conclusion. It seems reasonable, therefore, to conclude that no expert orthopedic surgeon would attempt to make an accurate and complete diagnosis as to the probable cause of postoperative spinal injury without interviewing or examining the patient, or considering the entirety of a patient's records. In this case Dr. Yarus allowed individuals other than himself to select particular records belonging to Plaintiff Wooley before he reviewed them. This is not a proper methodology for justifying how Dr. Yarus reached his conclusions.

Dr. Yarus's opinion is also called into doubt because Plaintiffs have failed to show that Dr. Yarus performed a proper differential diagnosis. In responding to whether Dr. Yarus had performed a differential diagnosis to rule out other potential causes for Plaintiff Wooley's pain, Plaintiffs state that Dr. Yarus had undertaken a thorough differential diagnosis based on the records supplied to him by Plaintiffs' counsel. *See id.* at 4. Other than this meek attempt to prove that a comprehensive differential diagnosis occurred, Plaintiffs cannot point to a single shred of evidence supporting Dr. Yarus's opinions with respect to Plaintiff Wooley's injuries. Dr. Yarus's report lacks any analysis indicating how he had ruled out other possible causes of Plaintiff Wooley's continued pain. It represents nothing more than a feeble attempt "to suppl[y] the finder of fact with no information other than what [the expert] believes the verdict should be." *Williams v. Wal–Mart Stores,* 922 F.2d 1357, 1360 (8th Cir.1990). In commenting on Dr. Yarus's meager effort to explain his conclusions, one other district court has noted that "Yarus does not provide any explanation for how he ruled out these other potential causes to arrive at his conclusion that the Danek implant caused the pain. Without proper grounding in valid scientific methodology, Dr. Yarus's conclusions are speculative, at best." *McCollin,* 50 F.Supp.2d at 1126; *See Guillory v. Domtar Indus., Inc.,* 95 F.3d 1320, 1331 (5th Cir.1996) (upholding trial court's decision to exclude an expert opinion based on mere speculation). This Court agrees that Dr. Yarus's diagnostic technique is nothing short of suspect. Plaintiffs have failed to show how Dr. Yarus's unreliable conclusions will assist the jury in determining whether Defendant's Simmons Plating System caused injury to Plaintiffs. Because Dr. Yarus provides no factual basis for his conclusions, his opinion is excluded as conclusory under the standards set forth by the Supreme Court in *Daubert.*

The Court is not alone in its rebuke of Dr. Yarus's opinion testimony. At least ten courts have already excluded Dr. Yarus's testimony in other bone screw products liability cases, calling his opinions methodologically unsound and therefore unreliable. *See, e.g., Hartwell,* 47 F.Supp.2d at 712–13 (finding Yarus's opinion inadmissible under the standards of *Daubert* and *Kumho,* and stating that "Dr. Yarus' ... armchair-quarterback style evades meaningful testing, eludes peer review, and makes error rates incalculable.... Opinions based on his ill regard for the use of pedicle screw fixation are at best conclusory, and, at worst, just bad science and junk medicine"); *Goodwin v. Danek Med., Inc.,* No. CV–S–95–433–HDM, slip op. at 6 (D.Nev. July 8, 1999) ("The Court concludes that an examination of the relevant nonexclusive factors [of *Daubert*] establishes that Dr. Yarus' opinion has not been developed by the appropriate scientific method."); *Parks v. Danek Med., Inc.,* No. 2:95–CV–206, slip op. at 8 (N.D. Ind. June 17, 1999) (excluding Dr. Yarus's causation opinion because his report "merely concluded, without any showing, that the pedicle screws caused [the plaintiff's] alleged injuries"); *McLellan,* 1999 WL 222591, at *3 (striking Dr. Yarus's testimony as inadmissible under Rule 702); *Edgar v. Danek Med., Inc.,* Prod.Liab.Rep. (CCH) p 15668 (M.D.Fla. Mar. 31, 1999) (noting Dr. Yarus's lack of reliability as an expert witness); *West,* 1998 WL 1041327 at *4 (finding Yarus's testimony insufficient to establish causa-

tion and granting summary judgment); *Moses v. Danek Medical, Inc.*, CV–S–95–512–DWH, 1998 U.S. Dist. LEXIS 21110, at *17 (D.Nev. Nov. 18, 1998) (noting that Yarus's method of "simple logic as opposed to medical training, experience, and examination" has not gained acceptance in the relevant scientific community, that "there is no indication that Dr. Yarus' peers competently discover such causal relationships ... from a desk [as opposed to using patient examination]," and that Yarus's opinion "cites conclusions only ... Dr. Yarus's opinion ... should not be admissible in the case at bar"); *Leigh v. Danek Medical, Inc.*, No. 4:95–CV797–A, 1998 WL 1041329 at *5 (N.D.Tex. Dec. 14, 1998) (stating that "Yarus cannot point out any symptoms that plaintiff had after surgery that he did not have before surgery ... he simply opines that since the plaintiff had pain before surgery and that pain worsened after surgery, the worsened pain must be a result of the instrumentation. The only conclusion to be drawn in this case is that Yarus's testimony was influenced by a litigation-driven financial incentive"); *Baker v. Danek Medical*, 35 F.Supp.2d 875, 878–80 (N.D.Fla.1998) (holding that Yarus's testimony of a temporal connection between the implantation and plaintiffs symptoms was insufficient to show causation); *see also Pulice*, 1999 WL 613370, at *5 (finding no scientific basis to support Dr. Yarus's opinions because they appear "to be almost entirely unsubstantiated and little more than subjective belief and unsupported speculation").

Many courts also have dismissed opinions such as Dr. Yarus's, which infer causation from the temporal relationship between pain and implantation surgery. *See, e.g., Burton v. Danek Medical Inc.*, No. CIV.A.95–5565, 1999 WL 118020 at *4–5 (E.D.Pa. Mar.1, 1999) (excluding a plaintiff's expert who failed to perform a differential diagnosis, stating that "there is no connection between [Plaintiff's] medical records and [the expert's] conclusion"); *Hickman v. Sofamor–Danek Group, Inc.*, No. C–95–1095 CW, 1999 WL

606690, at *9 (N.D.Ca. Feb. 17, 1999) (stating "[n]either [witness] ... supported his conclusions with peer-reviewed research, identified an objective source of information on which his conclusions were based, or demonstrated that he followed a generally accepted or scientifically reliable diagnostic methodology used by other professionals ... neither doctor's testimony meets the standard for reliability established in Daubert"); *Baker*, 35 F.Supp.2d at 880 (characterizing Dr. Yarus's opinion that pedicle screw fixation devices are unreasonably dangerous as "hardly generally accepted in the scientific community" and granting summary judgment because "plaintiff has simply failed to provide any evidence, amounting to more than speculation, that demonstrates that the Danek device was defective, unreasonably dangerous or the cause of plaintiff's injuries"); *Cali v. Danek Medical, Inc.*, 24 F.Supp.2d 941, 954 (W.D.Wis.1998) (holding that expert testimony was "unsupported speculation ... not entitled to the dignity of evidence," and that "where symptoms may be the subject of a variety of causes it is insufficient for an expert to opine as to the cause of the symptom without some scientific basis other than his assertion of general experience"); *West*, 1998 WL 1041327, at *6 (W.D.Okla. Dec.28, 1998) (commenting that "the court does not understand how the surgery's asserted failure to alleviate the plaintiff's problems ... establishes the required connection between the fixation device and the plaintiff's present condition"); *Huntman v. Danek Medical, Inc.*, No. 97–2155–IEG, slip op. at 7 (S.D.Cal. July 24, 1998) (stating that the fact plaintiff experienced pain after surgery is insufficient, by itself, to create an issue of fact regarding causation); *Baker v. Smith & Nephew Richards, Inc.*, No. 95–58737, 1999 WL 811334, at *33 (152d Dist. Ct., Harris County, Tex. June 7, 1999) (excluding opinion testimony in a products liability case involving S & N's Rogozinski Spinal Rod System because "while [the expert] uses the proper 'magic words' in his causation testimony,

there is no reliable support for his conclusion in the sparse evidence offered by [Plaintiff].... [A]n expert's mere incantation of legally sufficient words or phrases does not make an expert's opinion admissible").

Given this evidence, the Court finds that Defendant has shown Dr. Yarus's opinion to be wholly lacking in reliability. Therefore Defendant's Motion to Exclude Dr. Yarus's Opinion Testimony is **GRANTED**.

### C. *Defendant's Motion for Summary Judgment for Lack of Proof of Medical Causation*

With Dr. Yarus's testimony ruled inadmissible, Defendants now move for summary judgment, arguing that Plaintiffs have no expert who can establish medical causation—an essential element of a prod-

ucts liability claim. *See Pulice*, 1999 WL 613370, at *7 (noting that pedicle screw products liability claims typically cannot be proven without expert testimony). Specifically, Defendant notes that Plaintiffs have failed to present the Court with any admissible evidence indicating that Defendant's Simmons Plating System was defective or that it caused Plaintiff Wooley any postoperative injury.[3] As a result, Defendant alleges that Plaintiffs have not raised an issue of material fact on any of the claims that require proof of medical causation sufficient to withstand Defendant's Motion for Summary Judgment.

The Court agrees that, standing alone, Dr. Yarus's excluded testimony is insufficient to raise a material fact regarding causation.[4] Therefore, Plaintiffs face Defendant's Motion for Summary Judgment

---

**3.** To the contrary, evidence presented to this Court indicates that when Dr. Wagner removed the Simmons Plating System from Plaintiff Wooley's spine, the fusion mass was solid and no vertebrae motion had been detected. *See Pls.' Resp. to Def's Mot. to Exclude Op. Test. Ex. 4 at 1.*

**4.** Other courts have investigated Dr. Yarus's causation conclusions more carefully and have arrived at the same result:

Plaintiffs' expert Dr. Yarus opined in his report that the "Danek plates and screws utilized in my opinion to a reasonable degree of medical certainty directly contributed to this gentlemen's symptomology." Assuming as fact that the screw did directly contribute to [Plaintiff's] symptoms, this does not mean ipso facto the screw was defective. The screw may have been placed improperly, which is not the evidence before this Court, or the screw may have loosened on its own accord. Dr. Yarus does not indicate anywhere in his report that the screw itself, or any other part of the instrumentation used, was defective. As stated in the language used by Senior District Judge Paul, the report does not offer "a specific description of how the screw [ ] actually caused the injuries alleged in the instant case." There is simply no evidence regarding any design or manufacturing defect. The Court need not reach the issue of causation because plaintiffs have failed to show any evidence that they can use to prove the screw is defective. Even if they could, there is no evidence

relating to the causal relationship between the loose screw and the incontinence and pain. No more than mere conclusions exists.

*Savage*, 31 F.Supp.2d at 983–84 (citations omitted); *see Pulice*, 1999 WL 613370, at *7 ("There is simply no evidence that the Rogozinski device failed in any many whatsoever or that the design or manufacture resulted in a defective, unreasonably dangerous or otherwise deficient product which does not comply with an articulable scientific or medical requirement."); *Alexander*, 37 F.Supp.2d at 1350 (refusing to address "the issue of causation because plaintiff has failed to show any evidence that he can use to prove device is defective. Even if he could, there is no evidence relating to the causal relationship between the implantation of the device and the increased pain. No more than mere conclusions exist." (citations omitted)); *Baker*, 35 F.Supp.2d at 879 (rejecting Dr. Yarus's opinion as to causation because he failed to offer any testimony "other than a temporal connection between the implantation and symptoms suffered by plaintiff"). Here, Dr. Yarus's report does not offer a specific description of how Defendant's screws actually caused the injuries alleged. Moreover, the report fails to indicate whether any part of the device was defective, nor does it offer a specific description of how the device allegedly caused the injuries. Instead, Dr. Yarus bases his opinion solely on a temporal connection between the implantation of Defendant's product and Plaintiff Wooley's symptoms. As explained previously, this is unacceptable methodology.

without a medical causation expert. To make matters worse, Plaintiffs have failed to properly brief the summary judgment motion; consequently, the Court remains in the dark as to whether Plaintiffs plan to designate a causation expert other than Dr. Yarus. Ultimately, however, the entire issue is moot (at least for the time being) because, pursuant to the Docket Control Order issued by the Magistrate Court on November 3, 1999, Plaintiffs have until May 9, 2000 to designate their experts. Thus, until that deadline passes, it is premature for this Court to issue a ruling on causation. Plaintiffs are admonished, however, that the absence of other expert opinion will render summary judgment on medical causation appropriate. Hence, if, by May 9, 2000, Plaintiffs cannot produce a credible expert who can link Plaintiff Wooley's alleged postoperative injuries to Defendant's Simmons Plating System using a scientifically valid methodology, the Court, upon proper motion, will be inclined to revisit this issue and grant summary judgment to Defendant. Moreover, Plaintiffs are sternly cautioned that any substitute expert shall be appropriately experienced, credentialed, and qualified. He or she shall review *all* medical records pertaining to Plaintiff Wooley's treatment, examine Plaintiff Wooley himself, as well as the device at issue. Any opinions shall be predicated upon accepted literature or research in the field and factually specific. Failure to abide by these requirements shall result in the issuance of appropriate sanctions to both Plaintiffs *and* counsel.

Therefore, despite the inadmissibility of Dr. Yarus's opinion, Plaintiffs nevertheless have until May 9, 2000 to designate a properly qualified expert who can demonstrate an issue of material fact regarding medical causation in this case, if any. Accordingly, Defendant's Motion for Summary Judgment is for now **DENIED.**

**IT IS SO ORDERED.**