**Jerry ALEXANDER, Cipriano Alvarado, Lavonne Anderson, John Bennett, Marty Charles, Howard Childers, Coy Cook, Scott Cook, Michael Cox, Shirley Davis, Edwin Dean, Lois Dentis, Sheri Dillman, Preston Dugan, James Emerson, Jimmy Ford, Kenneth Gaddy, Teresa Gladd, Richard Higgins,**

Judy Hilker, Danny Jackson, James Keeling, Danny Kelly, Diane Kelly, Dorothea Kidney, William Knight, Barbara Larue, Larry Lee, Michael Marquez, Dale McDaniel, Janie Miller, Gilbert Nail, Darrin Prock, Homer Purcell, Donna Rambo, James Ready, Larry Scarbrough, Alfred Seip, Ray Shivers, Harold Skaggs, Bobby Smith, David Smith, Timothy Snider, Joelle Struble, Victor Taylor, Victoria Vaughn, Steve Wegner, Dean Wise, Clarence Woods, Michael Siler, and Cleotis Raines, Plaintiffs,

v.

SMITH & NEPHEW, P.L.C., and Smith & Nephew Richards, Inc., Defendants.

No. 96–CV–1004–K (E).

United States District Court, N.D. Oklahoma.

June 6, 2000.

Gary Allen Eaton, Eaton & Sparks, Tulsa, OK, Michael Ross, Green, Tulsa, OK, William Earl Sparks, Tulsa, OK, for Plaintiffs.

Richard Mark Eldridge, Thomas E. Steichen, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, OK, James B. Irwin, Montgomery, Barnett, Brown, Read, Hammond & Mintz, LLP, New Orleans, LA, for Defendants.

**ORDER**

KERN, Chief Judge.

Before the Court are Defendant Smith & Nephew Richards, Inc.'s ("Defendant's") motions for summary judgment and to exclude or limit the testimony of Michael Farrar, D.O., as to Plaintiff Lois Dentis ("Plaintiff").

### I. History of Case

This is a products liability case concerning the Rogozinski Spinal Rod System manufactured by Defendant, presently on remand from *In re Orthopedic Bone Screw Products Liability Litigation,* multidistrict litigation number 1014, in the United States District Court for the Eastern District of Pennsylvania. Plaintiff is suing Defendant for injuries allegedly sustained due to the Rogozinski system implanted into her back in 1991. Plaintiff's theories for liability include manufacturers' products liability, negligence, negligence per se, failure to warn, breach of express and implied warranties, and fraud.

Plaintiff injured her back in August 1990, while lifting a box at work. Over the next few months, Plaintiff was seen by WorkMed physicians and Sami Framjee, M.D., an orthopedic surgeon. In December, her workers' compensation physician, Michael Farrar, D.O., found evidence of disc derangement in the lumbar spine. In May 1991, Ms. Dentis began seeing Mark A. Hayes, M.D., an orthopedic surgeon, who eventually diagnosed her with small discrete herniated discs at L4–5 and L5–S1. Following unsuccessful conservative treatment, Plaintiff underwent her first surgery, a lumbar laminotomy and discectomy, with partial medial and lateral facetectomy of L4–5 on the right and L5–S1 on the left, in July 1991. Ms. Dentis' condition continued to worsen, and an MRI revealed considerable scar tissue at L5–S1. Dr. Hayes referred Plaintiff to Anthony C. Billings, M.D., for a consultation. Finding a disc herniation at the L5–S1 level, Dr. Billings recommended a lumbar laminecto-

my at L5–S1 with disc excision bilateral followed by instrumentation and fusion. Plaintiff agreed to a second surgery, which Drs. Hayes and Billings performed on November 5, 1991. In this surgery consisted of a segmental bilateral pedicle screw fixation of L4–5 and L5–S1, utilizing the Rogozinski Spinal Rod System; bilateral lateral mass fusion at L4–5 and L5–S1, with left iliac crest bone graft from a separate incision; and a decompressive lumbar laminectomy and discectomy redo at L4–5 and L5–S1. By January 1992, Dr. Hayes found that Ms. Dentis' fusion appeared to be consolidating satisfactorily and her pain to be small and limited to her low back in the evening. In February and June, 1993, however, Plaintiff experienced falls causing increased pain. In July 1993, x-rays showed intact hardware and narrowing disc space at L4–5 and L5–S1. Dr. Hayes suspected that Ms. Dentis was experiencing some pain secondary to her hardware, and he informed her that removal might help reduce this pain. Ms. Dentis chose to have the Rogozinski device removed, and Dr. Hayes explanted it on October 5, 1993. By November, Plaintiff reported feeling great. In June 1994, Plaintiff suffered another fall and accompanying low back pain. Plaintiff argues that the Rogozinski system was mechanically unsound and did not provide stability to her spine during the fusion process or otherwise promote fusion and that it caused her chronic pain and increased susceptibility to future spinal disorders.

## II. Exclusion of Expert Testimony

Defendant seeks to exclude the testimony of Dr. Michael Farrar, Plaintiff's medical causation expert, for failure to satisfy Fed.R.Evid. 702. Defendant argues that Dr. Farrar is not qualified to testify as to his expressed opinions, his opinions are not sufficiently reliable to satisfy Rule 702, and his opinions are irrelevant to the case.

### A. Standard

■ Fed.R.Evid. 702 authorizes a "witness qualified as an expert by knowl-edge, skill, experience, training, or education" to testify as to "scientific, technical, or other specialized knowledge." Testimony is admissible under Fed.R.Evid. 702, if it "rests on a reliable foundation and is relevant." *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). In making its initial determination of reliability, the Court has broad latitude to consider whatever factors the Court finds useful, and the particular factors will depend on the unique circumstances of the expert testimony involved. *See id.* at 152, 119 S.Ct. 1167. Factors mentioned in *Daubert* and *Kumho* include the following: (1) whether the reasoning or methodology underlying the expert's opinion has been or could be tested; (2) whether the reasoning or methodology has been subject to peer review and publication; (3) the known or potential rate of error; and (4) the level of acceptance of the reasoning or methodology by the relevant professional community. *See id.* at 149–52, 119 S.Ct. 1167; *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592–95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). These factors are not necessarily applied in every case and are not exclusive of other factors. *See Kumho,* 526 U.S. at 150, 119 S.Ct. 1167. An expert may rely on facts and data not in evidence to the extent reasonably relied upon by experts in his field. *See* Fed.R.Evid. 703. Rule 702 was intended to liberalize the introduction of relevant expert evidence, and such testimony is subject to being tested by "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786. The Court also must recognize that expert witnesses have the potential to "be both powerful and quite misleading." *Id.* at 595, 113 S.Ct. 2786.

### B. Dr. Farrar's Qualifications

■ Dr. Farrar does not qualify as an expert to testify as to the causation of

Plaintiff's ailments. Dr. Farrar's report indicates that he proposes to testify that the Rogozinski device is mechanically unsound and did not contribute to Ms. Dentis' attainment of solid fusion; the device caused excessive scarring, fibrosis, and the formation of hypertrophic bony overgrowth, leading to foraminal stenosis, permanent nerve root damage, chronic pain, and increased susceptibility and vulnerability to future spinal disorders; and an examination of the Rogozinski device explanted from Plaintiff indicates abrasion, corrosion, staining, and surface erosion.

The simple possession of a medical degree is insufficient to qualify a physician to testify as to the advantages of a spinal fixation device, the medical causation of spine-related ailments, or the mechanical functioning of an orthopedic implantation device. Plaintiff cites to *Wheeler v. John Deere Co.*, which states that "an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." 935 F.2d 1090, 1100 (10th Cir.1991). This opinion and the other federal cases cited by Plaintiff, however, are pre-*Daubert.*[1] A blanket qualification for all physicians to testify as to anything medically-related would contravene the Court's gate-keeping responsibilities.[2]

Dr. Farrar's experience does not qualify him to give the opinions to which he proposes to testify. Dr. Farrar has been licensed as a doctor in Oklahoma since 1979 and is board certified in family medicine. Since 1995, Dr. Farrar has been on the panel of approved physicians who perform independent medical examinations for the Oklahoma Workers' Compensation Court. In this capacity, Dr. Farrar asserts that he has examined hundreds of patients with spinal conditions in order to (1) evaluate and report on their level of disability and need for treatment; (2) provide medical treatment, usually conservative or rehabilitative care; and (3) determine the need for referral to various specialists, including spinal surgeons. Dr. Farrar further asserts that he has personally examined approximately 2,500 patients who have had spinal surgeries involving the implantation or explantation of pedicle screw internal fixation devices. Dr. Farrar was, in fact, Ms. Dentis' workers' compensation physician prior to her treatment by Dr. Hayes. Dr. Farrar's experience certainly qualifies him to provide the opinion that Ms. Dentis should consult a specialist in order to determine the source of and best treatment for her continued back pain. Dr. Farrar, however, lacks experience or training in orthopedics, spinal surgery, spinal fusion with instrumentation, neurology, or other areas related to the specialized opinions he has offered in this case. Plaintiff makes no attempt to demonstrate Dr. Farrar's qualifications in these specialized areas but rather relies on her assertion that Dr. Farrar's medical degree is qualification enough. Plaintiff further asserts that any doctor would be qualified to testify that the human body will reject a foreign body and that this rejection causes inflammation. Were this the extent of Dr. Farrar's proposed testimony, his opinions would not be relevant to the issues of this case, namely, whether a defect in the Rogozinski device

---

1. In fact, the only post-*Daubert* Tenth Circuit opinion to cite *Wheeler* is *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1519 (10th Cir.1996). *Compton,* however, was based on the erroneous holding that *Daubert* was inapplicable to opinions not based on a particular methodology or technique. *See id., abrogated by Kumho,* 119 S.Ct. at 1170.

2. Other courts have reached a similar conclusion regarding the testimony of medical doctors. *See, e.g., Whiting v. Boston Edison Co.,* 891 F.Supp. 12, 24 (D.Mass.1995) ("Just as a lawyer is not by general education and experience qualified to give an expert opinion on every subject of the law, so too a scientist or medical doctor is not presumed to have expert knowledge about every conceivable scientific principle or disease.").

caused Plaintiff's injuries. Plaintiff simply has not demonstrated that Dr. Farrar is "qualified as an expert by knowledge, skill, experience, training, or education" to testify as to the effects of the Rogozinski device or the causes of Ms. Dentis' ailments.[3] *See* Fed.R.Civ.Evid. 702.

### C. Reliable Foundation

 Even were Dr. Farrar to possess the appropriate qualifications, his proffer lacks a reliable foundation. Plaintiff must show that Dr. Farrar's method is scientifically sound and his opinion is based on sufficiently reliable facts. *See Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). At a minimum, Dr. Farrar should describe the method he used in reaching, and the data supporting, his determination. The Court cannot rely on an expert's mere assurance that the methodology and data are reliable. *See id.* The Court does not focus on an expert's conclusions but on whether his principles and methodology are sound. *See Daubert*, 509 U.S. at 595, 113 S.Ct. 2786. If any step renders Dr. Farrar's opinion unreliable—either in the choice of methodology or its application—his opinion is inadmissible. *See Mitchell*, 165 F.3d at 782.

Dr. Farrar's methodology for determining the medical causation of Plaintiff's ailments lacks the requisite reliability.[4] Dr. Farrar notes that he reviewed his records of a previous examination of Ms. Dentis, reviewed certain medical records, and inspected Ms. Dentis' explanted device.[5] On this basis, Dr. Farrar opines that the Rogozinski device caused Plaintiff's low back pain, as noted above. Dr. Farrar, however, fails to explain why he eliminated, assuming he even considered, other possible causes for Plaintiff's injuries. Dr. Farrar does not distinguish symptoms Ms. Dentis suffered before the implant surgery from the same symptoms that he now attributes to the Rogozinski device. Further, although he acknowledges in deposition testimony that Plaintiff could have suffered from the same complaints absent instrumentation, he does not explain why Plaintiff's ailments are not the effects of Plaintiff's surgeries or fusion surgery in general. Dr. Farrar's failure to explain why he attributes Plaintiff's continued pain to the Rogozinski device, as opposed to any spine or fusion surgery, instrumentation, or Plaintiff's underlying condition renders his methodology unreliable.[6]

3. Dr. Farrar further lacks the qualifications necessary to render opinions regarding the mechanical behavior of the Rogozinski device while implanted. Dr. Farrar has demonstrated absolutely no training, education, or experience in biomechanics or any related field.

4. This discussion will focus on Dr. Farrar's evaluation of whether Defendant's device *actually* caused Plaintiff's injuries, specific causation, rather than whether it is *capable* of causing such injuries, general causation.

5. Dr. Farrar's April 8, 1997, report actually states that he examined Ms. Dentis in his office on that same day. He goes on, however, to cite findings from a May 23, 1994, examination. Dr. Farrar has later testified that the former assertion was in error and that he did not reexamine Ms. Dentis in April 1997. Dr. Farrar later examined Plaintiff for workers' compensation purposes in September 1997.

6. Other courts have found that some sort of differential diagnosis or attempted elimina-

tion of other causes is an important, if not necessary, factor in determining the reliability of a medical causation opinion. *See, e.g.,Rutigliano v. Valley Bus. Forms*, 929 F.Supp. 779, 786 (D.N.J.1996) (requiring differential diagnosis before an expert may give opinion testimony regarding specific causation), *aff'd*, 118 F.3d 1577 (3d Cir.1997); *Wooley v. Smith & Nephew Richards, Inc.*, 67 F.Supp.2d 703, 703 (S.D.Tex.1999) (rejecting expert opinion as unreliable that, among other things, lacked any analysis indicating how other possible causes of the patient's pain were ruled out); *McCollin v. Synthes Inc.*, 50 F.Supp.2d 1119, 1127 (D.Utah 1999) (rejecting expert's opinion that, among other things, failed to explain how other potential causes were ruled out); *Cali v. Danek Med., Inc.*, 24 F.Supp.2d 941, 951 (W.D.Wis.1998) (finding that expert's assertion that implanted device caused patient's symptoms based on his general expertise and without ruling out other possible causes lacked sufficient reliability and was unsupported speculation); *Tucker v. Nike, Inc.*, 919 F.Supp. 1192, 1196–97 (N.D.Ind.1995) (find-

Dr. Farrar's methodology also suffers from its initial assumptions. Although Dr. Farrar has testified that he believes that the Rogozinski device has caused excessive scarring in Ms. Dentis, he does not base this opinion on Plaintiff's medical records but on his beliefs about the Rogozinski device in general. This methodology is flawed and ill-suited to the task of this litigation. Plaintiff submits Dr. Farrar's testimony for the purpose of proving that the Rogozinski device caused her actual injuries. A proper methodology would diagnose Plaintiff's injuries and then determine their origin. Dr. Farrar comes to his conclusion from the opposite direction. He determines that the device, in general, causes excessive scarring and then decides that Plaintiff must suffer from this ailment, because she had the device implanted and without regard to any medical record or other evidence otherwise indicating this injury. Dr. Farrar also states that the Rogozinski device caused foraminal stenosis, although he later testifies that there are no medical records stating that Ms. Dentis suffers from this condition. He further opines that the device caused permanent root damage, despite testifying that no medical record supports a finding that Ms. Dentis has such damage.

The availability of the "unavoidably unsafe" defense in a products liability action does not alter this analysis. In her defense of Dr. Farrar, Plaintiff cites *Tansy v. Dacomed* for the proposition that a jury must decide whether the risks of a medical implant outweigh any benefit it might provide. 890 P.2d 881 (Okla.1994). *Tansy* involves the application of Restatement (Second) of Torts § 404A cmt. k, which provides an affirmative defense to a manufacturers' products liability claim where the product is unavoidably unsafe with current technology but there exists a social need for the product warranting its production. *See id.* at 885. In *Tansy,* the

Oklahoma Supreme Court ruled that a risk-benefit analysis must be performed before applying cmt. k. *See id.* at 885–86. *Tansy* does not relieve Plaintiff of her duty to show causation in order to prevail on her manufacturers' products liability claim. *See infra.* Furthermore, *Tansy* has absolutely no bearing on whether Dr. Farrar's methodology is sufficiently reliable for his opinions to be submitted to the jury.

The standard used to determine the sufficiency of causation evidence does not affect this analysis. Plaintiff's reliance on the lesser causation standard of *McKellips v. Saint Francis Hospital, Inc.,* in order to cure the defects in her expert's methodology, is misplaced. 741 P.2d 467 (Okla.1987). In *McKellips,* the Oklahoma Supreme Court adopted the loss of chance of survival doctrine that lessens the causation burden in medical malpractice cases where the duty breached was one imposed to prevent the type of harm the patient ultimately sustained. *See id.* at 474. This doctrine, even if it were otherwise applicable, has *not* been extended to ordinary negligence actions brought against persons other than a medical practitioner or hospital. *See Hardy v. Southwestern Bell Tel. Co.,* 910 P.2d 1024, 1025–26 (Okla.1996). Thus, even if a lesser causation standard would be sufficient to lessen the reliability standards imposed by *Daubert,* the doctrine is inapplicable to this case. Furthermore, insisting that Dr. Farrar employ differential diagnosis does not require Plaintiff to prove causation beyond a reasonable doubt. Contrary to Plaintiff's analysis, *In re Paoli Railroad Yard PCB Litigation* reemphasizes the need for a medical causation expert to engage in diagnostic techniques that rule out other causes and offer a good explanation as to why his conclusion remains reliable when he does not. 35 F.3d 717, 761 (3d Cir.1994). Dr. Farrar has failed to do so and does not meet the

ing that expert's failure to exclude other possible factors and to inquire as to patient's

prior injuries rendered opinion unreliable).

reliability requirements imposed by Rule 702.[7]

## III. Summary Judgment

### A. Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence that would require submission of the case to a jury. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Mares v. ConAgra Poultry Co.,* 971 F.2d 492, 494 (10th Cir.1992). Where the nonmoving party will bear the burden of proof at trial, that party must go beyond the pleadings and identify specific facts which demonstrate the existence of an issue to be tried by the jury. *See Mares,* 971 F.2d at 494. Additionally, although the non-moving party need not produce evidence at the summary judgment stage in a form that is admissible at trial, the content or substance of such evidence must be admissible. *See Thomas v. International Bus. Machs.,* 48 F.3d 478, 485 (10th Cir.1995).

### B. Plaintiff's Claims

Plaintiff's claims against Defendant are as follows: (1) manufacturers' products liability; (2) negligence, including negligence per se; (3) failure to warn; (4) breach of express and implied warranties; and (5) fraud.[8] Defendant argues that, because Plaintiff has failed to prove causation, her entire case should be dismissed. Defen-

dant also argues that Plaintiff's Food and Drug Administration ("FDA") regulatory theories are legally unsound and that Plaintiff cannot establish any defect in the Rogozinski device.

### C. Manufacturers' Products Liability

 Because Plaintiff has put forward no evidence of medical causation, Defendant is entitled to summary judgment on Plaintiff's manufacturers' products liability claim. The three elements of a manufacturers' products liability action are as follows: (1) the product caused Plaintiff's injury; (2) the defect existed in the product at the time it left Defendant's possession and control; and (3) the defect rendered the product unreasonably dangerous. *See Kirkland v. General Motors Corp.,* 521 P.2d 1353, 1363 (Okla.1974). To establish causation, Plaintiff must prove that her injury was caused, not necessarily by the negligence of Defendant, but by reason of a defect built in and existing at the time of her injury. *See id.* at 1364. Unreasonably dangerous means that the device was dangerous to an extent beyond that which would be contemplated by the ordinary customer who purchases it, with the ordinary knowledge common to the community as to its characteristics. *See id.* at 1362–63.

 Absent the now-excluded testimony of Dr. Farrar, Plaintiff has no evidence of medical causation. The Oklahoma Supreme Court has frequently found expert testimony necessary to establish medical causation "[w]here injuries are of a character requiring skilled and professional men to determine the cause and extent thereof." *Williams v. Safeway Stores, Inc.,* 515 P.2d 223, 227 (Okla.1973).[9] Plaintiff has no expert qualified to render an opinion as to the cause of her injuries. As noted above,

---

**7.** Having found Dr. Farrar unqualified and his methodology unreliable, the Court does not rule on the relevance of his proffered opinion.

**8.** This formulation differs somewhat from that found in Plaintiff's complaint. However, given the complex history of the case, the Court will rely on Plaintiff's representations in her

summary judgment response as to the extent of her claims.

**9.** Plaintiff asserts that it is common knowledge and does not require a doctor to understand that a large irregularly shaped metal object implanted inside a person's body can mechanically compress, impinge upon, and irritate and injure adjacent tissues such as

Dr. Farrar's testimony cannot be admitted, because he is unqualified and his methodology is unreliable. Plaintiff also attempts to rely on the testimony of Harold Alexander, Ph.D., to satisfy this burden. However, Dr. Alexander's testimony is limited to orthopedic bioengineering by Pretrial Order No. 725.[10] *In re Orthopedic Bone Screw Prods. Liab. Litig.*, No. MDL 1014, 1997 WL 39583 *6 (E.D.Pa. Jan.23, 1997). This means Dr. Alexander may testify as to "how pedicle screws function in the human body and how the human body functionally, but not medically, responds to pedicle screws." *Id.* at *3. He is not, however, "particularly qualified to make ... statements in the additional disciplines of law, medicine, orthopedics, FDA regulatory practice, conflicts of interest, market surveys, and clinical studies." *Id.* at *4. While Dr. Alexander's affidavit covers many of these disallowed areas, his orthopedic bioengineering testimony is insufficient to create an issue of causation.[11]

### D. Negligence and Negligence Per Se

### 1. Negligence

 Plaintiff's negligence claim similarly fails on her inability to show cau-

sation. The elements of a negligence claim in Oklahoma are as follows: (1) the existence of a duty owed by Defendant to Plaintiff to use ordinary care; (2) the breach of that duty; and (3) an injury proximately caused by the breach. *See Comer v. Preferred Risk Mut. Ins. Co.*, 991 P.2d 1006, 1010 (Okla.1999). Therefore, in order for Plaintiff to recover on a negligence action, there must be a causal connection between Defendant's actions and the injury. *See Key v. Liquid Energy Corp.*, 906 F.2d 500, 505 (10th Cir.1990). As noted above, Plaintiff has failed to put forth any evidence of causation, rendering judgment for Defendant appropriate as to this claim, as well.

### 2. Negligence Per Se

 Plaintiff's has no viable claim for negligence per se, because this theory is inapplicable to labeling and marketing violations under the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, and Plaintiff has put forward no evidence of causation. When a statute or regulation governs conduct, the Court may adopt it as

---

nerves, muscles, blood vessels, and bones, thereby causing pain and dysfunction, just like a rock in a shoe causes pain. Furthermore, the phenomenon of foreign body rejection is universally recognized and well established in medical science....

(Pl.'s Resp. Def.'s Mot.Summ.J. at 24.) Even if Plaintiff were correct that the average lay person possessed such extensive knowledge, she still would lack any evidence that she suffers from excessive scarring, fibrosis, hypertrophic bony overgrowth, foraminal stenosis, and so forth, and that the Rogozinski device implanted in her spine actually caused these complaints.

10. Bioengineering includes the following: (1) biomechanics, the study of how a medical device will mechanically interact with surrounding tissue; (2) biomaterials, the study of the materials in a medical device and the body tissue's response to this device; (3) biomedical engineering, the study of how a device should be designed and constructed; and (4) design and analysis of device research, the study of the proper design and

implementation of studies to determine potential risks and benefits associated with device designs and the extent to which those risks and benefits are realized in clinical practice. *See* 1997 WL 39583, at *1, 6.

11. Plaintiff argues that Dr. Alexander's testimony is sufficient to establish that the device provided no medical benefit to Plaintiff and generated metal particles and corrosion products that produced an inevitable inflammatory response in adjacent tissues. As noted above, Dr. Alexander may be qualified to testify as to how the body mechanically reacted to the Rogozinski System, but he cannot testify as to how the body *medically* reacted to the device or the medical benefits of the device's use. Plaintiff attempts to make an unsupported leap from the device's mechanical behavior to the lack of any "medical benefit" and Plaintiff's symptoms. Plaintiff must bridge this gap with reliable and relevant expert medical causation testimony. While absolute certainty is not required in Oklahoma, the "mere possibility of causation is insufficient." *Hardy v. Southwestern Bell Tel. Co.*, 910 P.2d 1024, 1027 (Okla.1996).

the standard required of a reasonably prudent person if the Court believes it appropriate for civil liability. *See Gaines–Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 622 (10th Cir.1998). The violation of a statute is negligence per se if (1) the claimed injury is caused by the law's violation; (2) the injury is of the type intended to be prevented by the statute; and (3) the injured person is a member of the class the statute intends to protect. *See Lockhart v. Loosen*, 943 P.2d 1074, 1078 (Okla. 1997). Plaintiff's negligence per se claim appears to be based on Defendant's alleged violations of FDA regulations. The Court has rejected this theory in *Johnson v. Smith & Nephew Richards, Inc.*, No. 97–CV–363–K, 1999 WL 1117105 *2 (N.D.Okla. Sept.30, 1999).

 In this case, Plaintiff has failed to put forth evidence that Defendant's alleged violation of the FDA regulations caused her injury. On the contrary, Defendant has submitted Dr. Hayes' uncontroverted testimony that he knew that the Rogozinski device had not been approved by the FDA to be marketed for the insertion of bone screws in the vertebral pedicles, that this did not affect his medical judgment, and that he relied on his experience with the device, his knowledge of the medical standard of care, and the facts of

Ms. Dentis' case in recommending the surgery.[12]

Furthermore, the regulations alleged to have been violated are administrative and do not impose a standard of care, as could form the basis of a negligence per se claim. Plaintiff argues that Defendant unlawfully marketed the Rogozinski device for use with pedicular attachment. Under the Medical Device Amendments of 1976, 21 U.S.C. §§ 360c *et seq.*, devices are divided into three categories, Classes I, II, and III. The classes range from least to most dangerous. Class I devices are subject only to general controls. *See* 21 U.S.C. § 360c(a)(1)(A). Class II devices are subject to further special controls, and Class III devices require premarket approval ("PMA"). *See id.* § 360c(a)(1)(B)–(C). At the time of Plaintiff's surgery, the Rogozinski device with pedicular attachment fell under Class III. However, because it was substantially equivalent to devices marketed in interstate commerce prior to May 28, 1976, it could be introduced into the market without PMA. *See id.* §§ 360(k), 360c(f). This equivalency classification applied only to devices labeled and intended to be fixed to the spine by laminar hooks and sacral/iliac attachment. The FDA prohibited Defendant from labeling or promoting the device for pedicular attachment to the vertebral column. Moreover, the

---

12. Plaintiff states in her response that, Defendant holds Dr. Hayes out as an objective, unassailable medical expert. The Court should, for the limited purpose of ruling on Defendant's Motion for Summary Judgment, however, reject his opinions because of personal bias arising out of financial relationships with Defendant. (Pl.'s Resp. Def.'s Mot.Summ.J. at 38.) The Court notes that Dr. Hayes' affidavit is not being used as expert testimony but as fact testimony regarding his knowledge, belief, and actions when he implanted the Rogozinski device into Plaintiff's spine. To the extent that Plaintiff is asking the Court to disregard Dr. Hayes' testimony due to credibility issues, the Court finds this action to be inappropriate and further notes that such action would not correct Plaintiff's failure to put forth any issue of material fact warranting submission of her case to a jury. Plaintiff has submitted evi-

dence that, in 1992, Dr. Hayes had performed the most Rogozinski implantations; that Defendant reimbursed him for a trip to South Africa where he gave a lecture on his experience with the Rogozinski device; that his practice, Orthopedic Specialists of Tulsa, received an educational grant from Defendant to use in its study reviewing patient outcomes; and that Orthopedic Specialists was a large vendor of Defendant's equipment. Plaintiff has put forward no evidence controverting, and in fact has admitted, Dr. Hayes' testimony regarding his knowledge of the FDA status of the device and its risks and his testimony that he did not rely on Defendant's representations regarding the device in selecting it for use in Ms. Dentis. Furthermore, a reasonable jury could not infer from this evidence that Dr. Hayes actually had *less* knowledge than is his assertion.

FDA required that all labeling prominently note that the screws were intended for sacral/iliac attachment only and include the following statement: "WARNING—THIS DEVICE *IS NOT INTENDED FOR PEDICULAR APPLICATION.*" While the FDA regulates the manner in which Defendant markets the Rogozinski device, it does not regulate a physician's decision to use the device for another, "off-label" use. *See* Citizen Petition Regarding the Food and Drug Administration's Policy on Promotion of Unapproved Uses of Approved Drugs and Devices; Request for Comments, 59 Fed.Reg. 59,820, 59,821 (1994). Furthermore, the parties acknowledge that the FDCA does not provide a private right of action. *See* 21 U.S.C. § 337(a). Nevertheless, Plaintiff seeks to enforce the FDCA by arguing that the FDA's labeling requirements constitute a minimum standard of care. As noted in *Johnson*, these requirements are merely administrative in nature and lack any independent substantive content. *See* 1999 WL 1117105, at *2. Under these circumstances, the Court finds that the alleged violations of FDA regulations do not create a cause of action for negligence per se in Oklahoma. *Cf. Talley v. Danek Med., Inc.*, 179 F.3d 154, 161 (4th Cir.1999) (finding no negligence per se claim under Virginia law, because the regulations lack substantive content); *Baker v. Danek Med.*, 35 F.Supp.2d 875, 878 (N.D.Fla.1998) (finding no negligence per se claim under Florida law where FDCA does not provide private right of action and FDA status was immaterial to implanting surgeon); *but cf. Valente v. Sofamor*, 48 F.Supp.2d 862, 876 (E.D.Wis.1999) (disagreeing with *Cali v. Danek Med., Inc.*, 24 F.Supp.2d 941, 954 (W.D.Wis.1998), and finding Wisconsin law allows negligence per se claim based on violation of FDCA).

**13.** There are two exceptions to the learned intermediary doctrine in Oklahoma—mass immunizations and situations where the FDA has mandated that warning be given directly

### E. Failure to Warn

■ Defendant is entitled to summary judgment as to Plaintiff's claim for failure to warn. In Oklahoma, the learned intermediary doctrine is an exception to the duty to warn, under which the manufacturer can warn the physician rather than the ultimate consumer.[13] *See Tansy v. Dacomed Corp.*, 890 P.2d 881, 886 (Okla. 1994). The reasoning behind this doctrine is instructive. As a physician, Dr. Hayes has the duty to inform himself of the qualities and characteristics of the Rogozinski system and to exercise independent judgment, taking into account his knowledge of the patient, as well as the product. *See Edwards v. Basel Pharms.*, 933 P.2d 298, 300 (Okla.1997). The patient is expected to rely primarily on this judgment. *See id.* Therefore, if the Defendant properly informed Dr. Hayes, it is entitled to assume that he exercised his informed judgment. *See id.* at 300–01. In this case, Dr. Hayes has testified that he was fully informed as to the FDA status of the Rogozinski System, knew of its risks, did not rely on Defendant's informational materials, and exercised his independent medical judgment based on the standards of care and Ms. Dentis' situation in recommending the surgery. Plaintiff has presented no evidence to the contrary, nor has Plaintiff shown that the device caused her current physical ailments. Given these facts, Plaintiff can show no injury resulting from any failure to warn Dr. Hayes.

### F. Breach of Express and Implied Warranties

■ Summary judgment is appropriate as to Plaintiff's claims for breach of express warranty and breach of implied warranty. Plaintiff's claim for breach of express warranty fails, because Plaintiff has submitted no evidence that Dr. Hayes relied on any of Defendant's representations.

to the consumer—neither of which is applicable here. *See Edwards v. Basel Pharms.*, 933 P.2d 298, 301 (Okla.1997).

See *Speed Fastners, Inc. v. Newsom,* 382 F.2d 395, 397 (10th Cir.1967). Dr. Hayes states in his affidavit that Defendant did not make any warranty about, or promise of performance concerning, the Rogozinski System and that he was knowledgeable of the device's regulatory status and risks. He also states that he has used different spinal fixation devices and based his decision to use the Rogozinski device, in part, on his experience with the system. Plaintiff's only response is that, despite his affidavit to the contrary, the Court can infer that Dr. Hayes relied on these representations, because he attended a spinal fixation lecture sponsored by Defendant and because he may have had a financial bias toward the Rogozinski device and Defendant. Plaintiff puts forward no material facts in support of Dr. Hayes' reliance, warranting summary judgment to Defendant on this claim.

■ Plaintiff's warranty claims also lack any evidence of causation. In addition to breach of express warranty, Plaintiff alleges breach of implied warranty of fitness for intended use. In a products liability action, breach of implied warranty is no longer an appropriate remedy except as provided in the Uniform Commercial Code. *See Kirkland v. General Motors Corp.,* 521 P.2d 1353, 1365 (Okla.1974). In order to recover for breach of warranty, Plaintiff must show the following: (1) the existence of the warranty; (2) that the warranty was broken; and (3) that the breach was the proximate cause of the loss sustained. *See American Fertilizer Specialists, Inc. v. Wood,* 635 P.2d 592, 595 (Okla.1981); *see also* U.C.C. § 2–314 cmt. 13. As noted above, Plaintiff has no evidence that the device caused her injuries.

### G. Fraud

■ A fraud claim requires Plaintiff to prove (1) Defendant made a material representation; (2) that was false; (3) and made knowingly or recklessly, without regard for its truth; (4) with the intent that it be acted upon; and (5) Plaintiff was injured as a result. *See McCain v. Combined Communications Corp. of Okla., Inc.,* 975 P.2d 865, 867 (Okla.1998). In order to succeed on this claim, Plaintiff must show that Defendant's submissions to the FDA caused Dr. Hayes to use the Rogozinski Spinal System and that the device caused her injury. As detailed above, Plaintiff has no evidence supporting either assertion.

### IV. Conclusion

Because Dr. Farrar is not qualified to render his proffered expert opinion and because his methodology is unreliable, his testimony is excluded. Absent this testimony, Plaintiff lacks any evidence that the Rogozinski Spinal Rod System caused her injuries. Plaintiff also has submitted no evidence to contradict Defendant's evidence that her surgeon, Dr. Hayes, was aware of the FDA status of the device, did not rely on any representations made by Defendant, was aware of its risks, and chose to implant the Rogozinski system in Ms. Dentis based on his independent medical knowledge. Under these circumstances, Plaintiff's claims for manufacturers' products liability, negligence, negligence per se, failure to warn, breach of express and implied warranties, and fraud must fail.

IT IS THEREFORE ORDERED that Defendant's Motion to Exclude, or in the Alternative, Limit the Testimony of Michael Farrar, D.O. as to Plaintiff Lois Dentis (# 49) is GRANTED and Defendant's Motion for Summary Judgment as to Plaintiff, Lois Dentis (# 46) is GRANTED.